UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>METROPOLITAN AVIATION, LLC,<br><br>　　　　　Defendant. | Civil No. 1:19-cv-00428-LO-MSN |

**REPORT & RECOMMENDATION**

This matter comes before the Court on plaintiff United States of America's[1] Motion for Default Judgment (Dkt. No. 9). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends granting plaintiff's motion for the reasons that follow.

**I.   Procedural Background**

The government brought an action against defendant Metropolitan Aviation LLC ("defendant" or "Metropolitan Aviation") on April 11, 2019 for violating federal aviation regulations by failing to follow the proper procedure for flying an aircraft with non-working cabin lights and with inaccurate airspeed indicators. *See* Compl. (Dkt. No. 1) ¶¶ 9-14. On April 18, 2019, defendant's registered agent was served with a Summons, Notice, Complaint, Civil Cover Sheet, among other documents (Dkt. Nos. 4 and 5). Pursuant to the federal rules, defendant was required to answer the Complaint or otherwise respond by May 9, 2019. *Id.* On May 13, 2019, the government moved for an entry of default (Dkt. No. 6), supported by a declaration from Krista Anderson stating that defendant was properly served (Dkt. No. 6-1). On

---

[1]   The government brings this action for and on behalf of the Department of Transportation ("DOT"), Federal Aviation Administration ("FAA").

May 16, 2019, the Clerk entered a default judgment as to defendant for its failure to plead or otherwise defend the civil action (Dkt. No. 7).

Pursuant to a Court Order (Dkt. No. 8), on June 5, 2019, the government moved for a default judgment (Dkt. No. 9), including declarations from Krista Anderson (Dkt. No. 9-1) and Mark France (Dkt. No. 9-2), a proposed order and judgment (Dkt. Nos. 9-3 and 9-4), and a memorandum in support (Dkt. No. 11). The motion was noticed a hearing for June 28, 2019 (Dkt. No. 10). On that date, counsel for the government appeared at the hearing on its motion for default judgment but counsel for defendant failed to appear (Dkt. No. 12).

## II.     Factual Background

The government is acting through its agency the FAA, which is authorized to regulate the operation of commercial aircraft within the United States pursuant to Title 49 of the United States Code. Compl. (Dkt. No. 1) ¶ 3. FAA regulations provide that "[n]o person may operate a civil aircraft unless it is in an airworthy condition," 14 C.F.R. § 91.7, meaning that the "aircraft conforms to its type design and is in a condition safe for operation," *id.* at § 3.5(a).

Defendant is a limited liability company with a registered office in Reston, Virginia. Compl. (Dkt. No. 1) ¶ 4. Defendant has fewer than 1,500 employees and is, therefore, categorized as a small business concern. *Id.* Defendant is the holder of an air carrier operating certificate, number 27MA866L, under 14 C.F.R. Subchapter. G, Part 135. *Id.* at ¶ 7. Defendant maintained and operated an aircraft, registration number N74TS (the "Aircraft"). *Id.* at ¶ 8.

On May 1, 2016, one of defendant's pilots recorded an entry on the Aircraft Flight Maintenance Log reporting a difference in airspeed indicators, rendering the Aircraft as "unairworthy." *Id.* at ¶ 9. The log indicated that the required corrective action of removing and

replacing an airspeed indicator did not occur until after the Aircraft had been operated on four flights between May 1 and May 11, 2016, while the Aircraft was unairworthy. *Id.*

Defendant's General Maintenance Manual included a document referred to as a Minimum Equipment List ("MEL"), which was filed with the FAA and listed all of the items which may be inoperable on the Aircraft without requiring the Aircraft to be immediately grounded for repairs. *See* 14 C.F.R. § 91.213. The MEL provided scenarios where the "Passenger Cabin Normal Lighting System" in the Aircraft may be inoperative, such as if "inoperative lights do not exceed 50 percent of the total installed . . . ." Compl. (Dkt. No. 1) ¶ 10. On April 5, 2016, one of defendant's pilots made a log entry reporting several inoperative upper cabin lights on the Aircraft. *Id.* at ¶ 11. Although the MEL allowed for the deferral of cabin light maintenance if certain conditions were met, defendant did not follow the required MEL procedure: defendant did not perform corrective action with respect to this issue until June 27, 2016, when it replaced the light inverter installed in the cabin lighting system. *Id.* Despite being in an unairworthy condition, defendant operated the Aircraft on 32 flights with the inoperative lights from on or about April 5 to June 27, 2016. *Id.* at ¶ 12.

Pursuant to the authority vested in the Administrator of the FAA under 49 U.S.C. § 44709, on June 29, 2017, the Administrator issued a civil penalty letter against defendant under 49 U.S.C. § 46301(a)(5)(A), in the amount of $73,000.00 for its FAA violations. *Id.* at ¶ 13. That same day, defendant's director of operations, Alan R. Cook, was served with the civil penalty letter. *Id.* at ¶ 14. Defendant failed to pay the penalty, which still remains unpaid. *Id.*

Accordingly, the government brought the instant action against defendant for violating the following federal aviation regulations: 14 C.F.R. § 135.179(a)(5), which provides that no person may take off an aircraft with inoperable instruments or equipment installed unless the

aircraft is operated under all applicable conditions and limitations contained in the MEL and the operations specifications authorizing use of the MEL; 14 C.F.R. § 135.25(a)(2), which provides that no certificate holder may operate an aircraft under this part unless that aircraft is in an airworthy condition and meets the applicable airworthiness requirement, including those relating to identification and equipment; and 14 C.F.R. § 135.413(a), which provides that each certificate holder is primarily responsible for the airworthiness of its aircraft including airframes, aircraft engines, propeller, roters, appliances, and parts, and shall have its aircraft maintained and defects repaired between required maintenance. *Id.* at ¶ 15. Based on those violations, the government seeks the Court to enter a judgment against defendant in the amount of $73,000.00, among other relief that the Court deems proper. *Id.* at pg. 4.

### III. Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. The Court has subject matter jurisdiction under 49 U.S.C. § 46301(d)(4)(A)(iii) because the action was initiated after December 12, 2003 by the FAA against a small business concern for a penalty in the amount of more than $50,000.00. *See* Pl. Br. (Dkt. No. 14) 4. This Court also has personal jurisdiction of defendant, who is a Virginia limited liability company with a principal place of business in this judicial district. *Id.* at 5. Venue is likewise proper under 28 U.S.C. §§ 1391(b)(1)-(2) as defendant is located in this district, is doing business here, and a substantial part of the events or omissions giving rise to the claim occurred here. *Id.*

On April 18, 2019, defendant's registered agent was served with a Summons, Notice, Complaint, Civil Cover Sheet, among other documents (Dkt. Nos. 4 and 5). Defendant failed to answer within the 21 day timeframe required by Fed. R. Civ. P. 12(a)(1)(A)(i). Instead, after the

government requested an entry of default judgment and the Clerk filed an entry of default, defendant failed to appear at the hearing for the government's motion for default judgment.

## IV. Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)).

Although well-pleaded factual allegations are accepted as true for default of judgment purposes, a party who defaults does not admit the allegations in the claim as to the amount of damages. *South Bank & Trust Co. v. Pride Grp. LLC*, 2015 U.S. Dist. LEXIS 10554, at *10 (E.D. Va. Jan. 28, 2015) (citing Fed. R. Civ. P. 8(b)(6)). Once a court concludes that liability is established, it must then independently calculate the appropriate amount of damages by either conducting a formal evidentiary hearing under Fed. R. Civ. P. 55(b)(2) or reviewing affidavits or

documents attached to plaintiff's motion. *Id.* at *10-11 (citing *Anderson v. Found. for Advancement*, 155 F.3d 500, 507 (4th Cir. 1998)).

Here, because defendant has not timely responded, the well-pleaded allegations of fact contained in the Complaint are deemed to be admitted, but not with respect to damages.

**V.    Analysis**

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the Complaint (Dkt. No. 1), supported by plaintiff's Motion for Default Judgment (Dkt. No. 11) and accompanying documents, establish that defendant violated several FAA regulations, including 14 C.F.R. §§ 135.179(a)(5), 135.25(a)(2), and 135.413(a), and is entitled to $73,000.00 in damages. Accordingly, the undersigned finds that judgment should be entered in the government's favor in the amount of $73,000.00.

### a.    FAA Violations for Non-working Cabin Light

Defendant violated the FAA regulations regarding the conditions in which aircraft with inoperable instruments may fly by operating the Aircraft with non-working cabin lights. In relevant part, 14 C.F.R. § 135.179(a)(5) provides:

> (a) No person may take off an aircraft with inoperable instruments or equipment installed unless the following conditions are met:
> . . .
> (5) The aircraft is operated under all applicable conditions and limitations contained in the [MEL] and the operations specifications authorizing use of the [MEL].

The MEL for the Aircraft provided that the "Passenger Light System" may be inoperative under various circumstances, including if "inoperative lights do not exceed 50 percent of the total installed." Compl. (Dkt. No. 1) ¶ 10. However, the MEL allows for the operation of an aircraft with certain types of inoperative equipment following the evaluation of the cause and severity of the malfunction, documentation of the inspection actions taken, and logbook entries identifying

6

the applicable MEL reference used to defer the repair of the malfunctioning equipment. *See* France Declr. (Dkt. No. 9-2) ¶ 6.

Additionally, FAA regulations prohibit the operation of an aircraft not in an airworthy condition. *See* 14 C.F.R. § 135.25(a) (providing that an aircraft may only be operated in an airworthy condition, meaning the aircraft "meets the applicable airworthiness requirements of this chapter, including those relating to identification and equipment"); *see also id.* at § 135.413 (stating that each certificate holder "is primarily responsible for the airworthiness of its aircraft" and "shall have its aircraft maintained under this chapter . . . and have defects repaired between required maintenance under part 43 of this chapter").

When defendant made a log entry reporting several inoperative upper cabin lights on the Aircraft on April 5, 2016, defendant did not follow required MEL procedure. Specifically, defendant failed to placard the cabin lights as inoperative and note the issue in the Aircraft Discrepancy Log Sheet. Compl. (Dkt. No. 1) ¶ 9; France Declr. (Dkt. No. 9-2) ¶¶ 6-7. This discrepancy rendered the Aircraft as unairworthy. *See* France Declr. (Dkt. No. 9-2) ¶ 6. According to the log, the required repair to the Aircraft was made on June 27, 2016. Compl. (Dkt. No. 1) ¶ 12. Despite being in an unairworthy condition, defendant violated 14 C.F.R. §§ 135.179(a)(5), 135.25(a)(2), and 135.413 by operating the Aircraft on 32 flights from on or about April 5 until on or about June 27, 2016. *Id.* Doing so violated the required MEL procedure for inoperative flights.

### b. FAA Violations for Inaccurate Airspeed Indicators

Defendant violated FAA regulations prohibiting the operation of aircraft with discrepancies in airspeed indicators. Air carriers must operate flights in compliance with the MEL, which does not permit deferral of airspeed indicator repair. *See* France Declr. (Dkt. No. 9-

2) ¶ 8. Discrepancies in airspeed indicators render an aircraft as unairworthy. *Id.* The FAA regulations prohibit the operation of an aircraft that is not in an airworthy condition. *See* C.F.R. §§ 135.25(a)(2), 135.413. Defendant violated those regulations by operating the Aircraft on four flights between May 1 and May 11, 2016 while there was a discrepancy in the airspeed indicators on the Aircraft. Compl. (Dkt. No. 1) ¶ 9.

### c. Damages

The FAA requested a civil penalty of $73,000.00 pursuant to its authority under 49 U.S.C. § 46301. At the time of defendant's violations, 49 U.S.C. § 46301(a)(5)(A) provided that a "small business concern is liable to the Government for a civil penalty of not more than $10,000.00 for violating . . . chapter 447 (except sections 44717-44723) . . . of this title or (ii) a regulation prescribed or order issued under any provision to which clause (i) applies." To account for inflation, the penalty was increased from $10,000.00 to $11,000.00. *See* 61 Federal Register 67444-01. A separate violation of this statute occurs "each day the violation . . . continues or, if applicable, for each flight involving the violation." 49 U.S.C. § 46301(a)(2).

As the government correctly states, defendant's FAA violations fall within the scope of 49 U.S.C. § 46301(a)(5)(A)(ii). First, defendant is a small business concern. *See* Compl. (Dkt. No. 1) ¶ 4; France Declr. (Dkt. No. 9-2) ¶ 10. Second, the FAA regulations defendant violated—14 C.F.R. §§ 135.179(a)(5), 135.25(a)(2), and 135.413—were prescribed under Chapter 447 of Title 49, meaning that they fall within the ambit of "regulation(s) prescribed . . . under any provision to which clause (i) applies." *See* 49 U.S.C. § 46301(a)(5)(A)(ii).

The government argues that they could have obtained a penalty of $11,000.00 for each instance in which defendant operated an aircraft in violation of the FAA regulations: defendant operated 32 flights in which defendant failed to follow the required MEL procedure for non-

working cabin lights and, during four of those flights, defendant also operated the Aircraft despite a discrepancy in the airspeed indicators that rendered the Aircraft unairworthy. Pl. Br. (Dkt. No. 11) 10. In total, under 49 U.S.C. § 46301(a)(5)(A), the government could obtain $396,000.00 in penalties for defendant's 36 separate violations. *Id.*

However, instead, the government is seeking reduced sanctions. *See* France Declr., Ex. B (Dkt. No. 9-2) 186 (stating that agency guidance provides that although legal enforcement actions typically involve adding the individual penalties for each act, the sanctions sought may be reduced if the resulting dollar figure is "disproportionately harsh"). First, for the 32 flights where defendant failed to comply with MEL procedure for inoperative cabin lights, the FAA determined that a minimum civil penalty range of $550.00 to $2,199.00 per flight was appropriate. *See* France Declr. (Dkt. No. 9-2) ¶ 11. The FAA took the midpoint of that range ($1,374.50) and multiplied it by 32, totaling to $43,984.00. *Id.* Second, for the four flights where defendant operated the Aircraft with inaccurate airspeed indicators, the FAA determined that a moderate to maximum penalty range of $4,400.00 to $11,000.00 was appropriate. *Id.* The FAA took the midpoint of that range ($7,200.00) and multiplied it by four, totaling to $28,800.00. *Id.* The sum of the FAA violations was $72,784,000.00, which the government rounded-up to $73,000.00. *Id.*

Accordingly, based on the reasons stated above, the undersigned recommends a judgment in the amount of $73,000.00 entered against defendant.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends:

1) Granting Plaintiff's Motion for Default Judgment (Dkt. No. 9); and
2) Awarding Plaintiff $73,000.00.

**VII.	Notice**

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendant at its address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

July 18, 2019
Alexandria, Virginia